**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X    03 CV 3743 (NG)
**THOMAS KING,**

                **Petitioner,**

  -against-                                                                                                **OPINION AND ORDER**

**GARY GREENE, Superintendent of Green**
**Meadow Correctional Facility,**

                **Respondent.**
----------------------------------------------------------------X

**GERSHON, United States District Judge:**

*Pro se* petitioner Thomas King applies to this court under 28 U.S.C. § 2254 for a writ of habeas corpus, alleging that he is being held in custody in violation of the Constitution and laws of the United States pursuant to the judgment of a court of the State of New York. For the reasons set forth below, petitioner's application is denied.

**PROCEDURAL HISTORY**

Following a jury trial in New York Supreme Court, Kings County (George, J.), petitioner was convicted of one count of attempted murder in the second degree, N.Y. Penal Law §§ 110.00/125.25[1], in connection with the shooting of Walter Vanison. He was sentenced on December 18, 1998 to a prison term of twenty-five years to life.

On direct appeal to the Appellate Division, Second Department, petitioner raised four claims: (1) the prosecution's late disclosure of tapes containing 911 calls violated the *Rosario* rule, as well as due process; (2) the trial court's refusal to admit one of the 911 calls into evidence violated the

1

petitioner's right to present a defense; (3) petitioner's conviction was barred by New York's speedy trial law; and (4) the trial court's refusal to conduct a hearing concerning whether a detective took notes during a witness interview denied defendant a fair trial. By order dated October 21, 2002, the Appellate Division affirmed petitioner's conviction. *People v. King*, 298 A.D.2d 530 (2d Dep't 2002). With respect to the late disclosure of the 911 tapes, the court held that, since the evidence "was turned over prior to the applicable testimony and the defense counsel was afforded the opportunity to review the material and cross-examine the witness regarding the telephone call, . . . its untimely disclosure did not so substantially prejudice the defendant as to require a new trial." *Id.* at 531. The court found petitioner's remaining claims to be "without merit." *Id.* Petitioner's application for leave to appeal to the New York Court of Appeals was denied on April 17, 2003.

Petitioner filed a petition, dated July 17, 2003, for a writ of habeas corpus from this court. In it, he asserts the same claims that were asserted on direct appeal, except for the speedy trial claim, which is omitted.[1]

Subsequently, on September 23, 2003, petitioner filed a motion in the Appellate Division for a writ of error *coram nobis*, claiming ineffective assistance of appellate counsel. Petitioner argued that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial

---

[1] Petitioner's state appellate brief contains, at the outset, a list of "issues on appeal." The third item in the list states: "The many instances of prosecutorial misconduct during opening and summation deprived the defendant of his right to due process and a fair trial and constituted reversible error." This issue is not argued in the body of the brief, however. Instead, the third issue argued in the brief is the speedy trial issue, which is not included in the initial list. In composing the list, it appears that appellate counsel substituted the prosecutorial misconduct issue for the speedy trial issue by mistake. The grounds for relief cited in the habeas corpus petition mirror the list of issues in the state appellate brief; thus, the third ground offered for relief is prosecutorial misconduct during opening and summation. In the brief in support of the habeas corpus petition, however, petitioner makes no argument concerning prosecutorial misconduct. Accordingly, the claim concerning prosecutorial misconduct asserted in the petition is deemed abandoned. (The claim would, in any event, be procedurally barred.)

counsel based on trial counsel's failure to listen to the 911 tapes before cross-examining a prosecution witness. The motion was denied by the Appellate Division on February 9, 2004, and leave to appeal to the Court of Appeals was denied on June 23, 2004. On October 2, 2003, petitioner moved to vacate his conviction pursuant to N.Y. C.P.L. § 440.10, claiming ineffective assistance of trial counsel and prosecutorial misconduct. The motion was denied by order of the New York Supreme Court, Kings County (Silverman, J.) on January 21, 2004. The court held that both claims were statutorily barred.[2] It also noted that the claim of ineffective assistance of trial counsel was meritless. Petitioner was denied leave to appeal the denial of his Section 440 motion.

On the same day that petitioner filed the motion for a writ of error *coram nobis*, he wrote a letter to this court requesting that his habeas corpus petition be held in abeyance pending the outcome of the State court proceeding. That request was granted by order dated October 1, 2003. Following the denial of petitioner's motion for a writ of error *coram nobis*, petitioner made an application to this court, dated September 28, 2004, to reopen this case and for leave to amend his petition to add claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. Such leave was granted by order dated October 20, 2004.

## FACTS

Taken in the light most favorable to the prosecution, the evidence at trial established the following facts: On November 1, 1995, at approximately 5:30 PM, Walter Vanison was shot twice in the face and twice in the back on the sidewalk in front of 19 Quincy Street in Brooklyn, New

---

[2] N.Y. C.P.L § 440.10(2)(c) requires a court to deny a motion to vacate a conviction if all the necessary facts relating to the legal issue appear on the record of the underlying proceeding.

York. He had been walking with the petitioner, Thomas King, who was a friend of Mr. Vanison's sister, Charlotte Caldwell. Jacqueline Lonan witnessed the shooting from the window of her apartment, located on the fourth floor of 3 Quincy Street, and called 911. Ms. Lonan could not identify the shooter, but testified that she saw two men walking together, one tall and one short, and that the short man pulled out a gun and shot the tall man several times.

At the time of the shooting, business partners Carl Abbot and Shalom Neuman were working on a project at Neuman's studio, located at 25 Quincy Street. After hearing the gunshots, they went outside to investigate. Mr. Abbot approached Mr. Vanison, who was conscious, and began to talk to him. Mr. Vanison became agitated and declared: "I'm dead. I'm dead." When Mr. Abbot asked who shot him, Mr. Vanison replied, "King did it." In the meantime, Mr. Neuman called 911. Mr. Vanison also reported to police officers and emergency medical personnel, when they arrived at the scene, that petitioner was the shooter.

Before the Grand Jury, petitioner admitted to being with Mr. Vanison at the time of the shooting, but claimed that a third man approached them with a gun and shot Mr. Vanison. He also admitted to fleeing the scene and hiding from police after learning from Ms. Caldwell that Mr. Vanison had identified him as the shooter. The prosecution read a redacted version of petitioner's Grand Jury testimony into the record at trial.

As a result of the gunshot wounds, Mr. Vanison was immediately paralyzed and blinded in one eye. He died approximately one year later from complications caused by the gunshot wounds.

**Petitioner's Request for the 911 Tapes**

Prior to the trial, the defense requested that the prosecution turn over copies of any recordings

of telephone calls to 911 concerning the shooting of Mr. Vanison, and provided a blank tape to the prosecution for that purpose. The prosecution did not turn over any recordings but did turn over transcripts of the relevant 911 calls, known as "sprint reports." On the first day of testimony, however, the prosecution admitted that it had the actual recordings in its possession. The following morning, the prosecution turned over two tapes containing 911 calls. One of these contained the call made by Ms. Lonan (although she did not identify herself to 911 operators). Ms. Lonan testified after the lunch break on the day that the tapes were turned over.

Subsequently, petitioner moved to strike the testimony of Ms. Lonan as a sanction for the belated disclosure, or, in the alternative, to be allowed to recall her to the stand. Defense counsel argued that the sprint report corresponding to Ms. Lonan's 911 call was not a complete and accurate transcript of the call because it recorded only Ms. Lonan's initial conversation with the police operator and not her subsequent conversation with an EMS operator. In her conversation with the EMS operator, Ms. Lonan reported that she heard "five or six" gunshots, but she testified at the trial that she heard four gunshots. Furthermore, she told the EMS operator that she saw people gathering around the victim, which conflicts with testimony given by Mr. Abbot that, when he approached the victim several minutes after the shooting, no one else was there. Defense counsel argued that the defense was prejudiced by the belated disclosure of the tapes because he did not have sufficient time to review them prior to Ms. Lonan's testimony and, thus, could not cross-examine her effectively concerning the inconsistencies in her statements. In response, the prosecution conceded that it committed a violation of *People v. Rosario*,[3] but argued that there was no prejudice because defense

---

[3]In *People v. Rosario*, 9 N.Y.2d 286, 289-90 (1961), the New York Court of Appeals held that a prosecutor must disclose to the accused any prior statement made by a prosecution witness that relates to the subject matter of the witness's testimony, unless the statement contains information that the necessities of

5

counsel had an opportunity to review the tapes over the lunch break prior to Ms. Lonan's testimony and defense counsel cross-examined Ms. Lonan about other inconsistencies in her statements. The court denied the defense motion in its entirety, noting that, at the time the 911 tapes were turned over, defense counsel could have made an application for a continuance but did not do so: "Mr. Jackson, you have not been shy about requesting time on this matter, and if you had requested an hour or whatever to listen to this five minute tape, you certainly would have received that opportunity." Tr. at 409.

After the trial court denied petitioner's motion, defense counsel requested permission to play the tape for the jury. The trial court ruled that, since Ms. Lonan did not identify herself to 911 operators, the tape of her call to 911 could not be admitted as a prior inconsistent statement unless a proper foundation was laid for it. Defense counsel then requested permission to call Ms. Lonan as a witness during the defense case. The trial court responded: "Well, Mr. Jackson, you can try your case as you think appropriate." Tr. at 413. Defense counsel served a subpoena on Ms. Lonan, so ordered by a judge in the miscellaneous part, but she failed to appear on the date specified. When defense counsel brought this to the attention of the trial court, the court offered to sign a material witness order. Defense counsel did not have an order prepared, however, and requested additional time. The court denied the request, finding that defense counsel failed to act promptly upon learning of Ms. Lonan's failure to appear: "Mr. Jackson, if you want that witness to testify and that witness does not come in voluntarily, and you have subpoenaed that witness to be here at 9:30, then it behooves you to do something about it and not talk about it later. It's almost five o'clock now." Tr.

---

effective law enforcement require be kept confidential. This rule of law was subsequently codified at N.Y. C.P.L. § 240.44(1).

at 647-48.

Subsequently, defense counsel made an application to play the tape of Ms. Lonan's 911 call during the testimony of Ralph Lafemina, a private investigator working for defense counsel and a defense witness. The application was denied. Mr. Lafemina testified that Ms. Lonan told him that she did not actually view the shooting. He also testified, based on personal observation, that, from Ms. Lonan's window, the view of the crime scene was obstructed by a fire escape.

**Petitioner's Request for the Detective's Notes**

On the night of the shooting, Detective Arthur, who was not called to testify at the trial, interviewed Jacqueline Lonan and Dmitri Jenin, an emergency medical worker who treated Mr. Vanison at the scene of the crime and testified during the prosecution's case. The defense requested that the prosecution turn over any handwritten notes of the interviews as *Rosario* material. The prosecution represented that no such notes existed. The prosecution did turn over typed DD-5 reports, which are standard police department forms, prepared by Detective Arthur following the interviews. The defense requested that the court conduct a hearing on the matter; the court denied the request.

## DISCUSSION

**I.   Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996), mandates deference to state court decisions by federal courts conducting habeas corpus review. Under its provisions, an application for a writ of habeas corpus on behalf of a person in

7

custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in the state court unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The habeas court must presume that the state court's determination of factual issues is correct unless the petitioner demonstrates otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that a state court decision is "contrary to" clearly established Supreme Court precedent if it "contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The Court has further held that a state court decision is "an unreasonable application of" clearly established Supreme Court precedent if, from an objective standpoint, the state court applied Supreme Court precedent unreasonably, not simply incorrectly or erroneously. *Id*. at 411. The Court of Appeals for the Second Circuit has clarified this standard, holding that "[although] some increment of incorrectness beyond error is required ... the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Sellen v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

## II. Late Disclosure of the 911 Tapes

Petitioner claims that the late disclosure of the tapes containing the 911 calls constituted a *Rosario* violation and deprived him of his due process right to a fair trial.

### A. Rosario *Claim*

The *Rosario* rule, *see Rosario*, 9 N.Y.2d at 289-90; N.Y. C.P.L. § 240.44(1), derives from principles of state common law and is not required by the U.S. Constitution. As a result, it does not present a basis for habeas corpus relief. *Brown v. McKinney*, 358 F. Supp. 2d 161, 171 (E.D.N.Y. 2005); *Green v. Artuz*, 990 F. Supp. 267, 274 (S.D.N.Y. 1998). Accordingly, the court will consider the prosecution's belated disclosure of the 911 tapes only in the context of the Due Process Clause.

### B. *Due Process Claim*

The Due Process Clause imposes a duty on the prosecution to disclose evidence favorable to the accused when it is material to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). The prosecution's duty to disclose is not limited to evidence that tends to exculpate the accused; it also includes evidence that could be used to impeach a prosecution witness. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). There are three components to a violation of the prosecution's disclosure duty: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The standard for prejudice is whether the evidentiary suppression "undermines our confidence" that the factfinder would have reached the same result.

*Id*. at 300-01. With respect to the timing of disclosure, as long as exculpatory or impeachment material is disclosed in time for its effective use, the prosecution has not deprived the accused of due process of law. *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001). Thus, there is no due process violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial. *Id*.

Here, the 911 tapes were disclosed to the defense prior to Ms. Lonan's testimony. Defense counsel had an opportunity to review the tapes over the lunch break or, in the alternative, to request a continuance, but chose instead to proceed without reviewing the tapes. In any event, the court is confident that, even had defense counsel cross-examined Ms. Lonan about the inconsistencies between her testimony and her statements to the EMS operator, the outcome of the trial would not have been different. Defense counsel had ample other impeachment evidence at his disposal, which he used during his extensive cross-examination of Ms. Lonan. He questioned Ms. Lonan about inconsistencies between her testimony and the testimony of other witnesses; for example, Ms. Lonan testified that it was not raining on the night of the shooting while other witnesses testified that it was raining. Defense counsel also questioned Ms. Lonan about an open case that she had for assault and argued during summation that it provided her with a motive to lie for the prosecution. In addition, defense counsel elicited testimony from Mr. Lafemina that Ms. Lonan told him that she did not actually view the shooting and that, based on Mr. Lafemina's personal observation, the view of the crime scene from Ms. Lonan's window was obstructed by a fire escape. If the jury found Ms. Lonan's testimony to be credible despite this impeachment evidence, it is not likely that the minor inconsistency in her statements about how many gunshots she heard (four versus five or six) or the apparent conflict between her statement and Mr. Abbot's testimony concerning when a crowd began

to gather, would have changed their minds. Moreover, the weight of Ms. Lonan's testimony in the prosecution's overall case was not substantial. Ms. Lonan could not identify the shooter. The victim, however, identified petitioner as the man who shot him, and petitioner admitted to being present at the scene of the crime, to fleeing the scene following the shooting, and to hiding from police.

Accordingly, there is no basis for the court to conclude that the Appellate Division's decision concerning the late disclosure of the 911 tapes is either contrary to, or involves an unreasonable application of, federal law.

### III. Exclusion of the Tape of Ms. Lonan's Call to 911

Petitioner argues that, by excluding the tape of Ms. Lonan's call to 911 from evidence, the trial court violated his right to present a defense. Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, ___ U.S. ___, ___, 126 S. Ct. 1727, 1731 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). An accused's right to present relevant evidence, however, is subject to reasonable restrictions. *See id.* at 1732; *Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir. 2003).

Here, the trial court ruled that, since Ms. Lonan did not identify herself to 911 operators, the tape of her call to 911 could not be admitted as a prior inconsistent statement unless the petitioner laid a proper foundation for it. The prosecution stipulated to the authenticity of the tape, petitioner was granted permission to call Ms. Lonan as a witness during the defense case, and a judicial

11

subpoena was issued for her to appear. When she failed to appear, the court declined to grant petitioner a continuance because he delayed in requesting one and was not prepared to submit a material witness order for the court's execution. While an accused's right to present a defense may, in some cases, require the court to grant a continuance to ensure the presence of a material witness, the trial court here acted within its discretion in denying a continuance where the accused, himself, delayed in taking the steps necessary to secure the witness's presence. *See United States v. Gonzalez-Rogue*, 301 F.3d 39, 46 n.4 (2d Cir. 2002); *United States v. King*, 762 F.2d 232, 235 (2d Cir. 1985).

In any event, the tape of Ms. Lonan's call to 911 did not constitute evidence that was central to petitioner's defense. As discussed *supra*, the tape would have added little to the overall weight of the impeachment evidence aimed at Ms. Lonan. If it was error to exclude the tape of Ms. Lonan's call to 911, then the error was harmless under all potentially applicable standards.[4]

Accordingly, the Appellate Division's conclusion that petitioner's claim was "without merit" is neither contrary to, nor involves an unreasonable application of, federal law.

## IV. Detective Arthur's Notes

Petitioner claims that the trial court's refusal to conduct a hearing to determine whether Detective Arthur took notes during his interview of Ms. Lonan violated his right to due process of law. He contends that Detective Arthur must have taken notes at the time of the interview and that

---

[4]Following the enactment of AEDPA, the Court of Appeals for the Second Circuit has yet to define the standard of review appropriate to determine whether a constitutional error challenged on collateral review is harmless where the state court does not address the question of harmlessness. *Howard v. Walker*, 406 F.3d 114, 123 (2d Cir. 2005). Where the question has arisen, the court has declined to resolve it, finding instead that the harmlessness determination would be identical under all contending standards. *Id.*

his notes would likely contain statements by Ms. Lonan that were inconsistent with her trial testimony. Petitioner's claim is based on sheer speculation; petitioner offers no evidence to rebut the prosecution's representation that Detective Arthur did not take notes. Notably, petitioner did not ask either Mr. Jenin or Ms. Lonan, during cross-examination, whether Detective Arthur took notes when he interviewed them. Nor did petitioner call Detective Arthur as a witness during the defense case to ask him whether he took notes.

Absent evidence that exculpatory or impeachment material is being withheld by the prosecution, a trial court has no constitutional duty to probe beyond the prosecution's representation that no such material exists. *Cf. Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final.") (footnote omitted). Here, petitioner failed to provide any evidence that Detective Arthur took notes during his interview of Ms. Lonan, much less that the purported notes contained impeachment material; his unsupported speculation was not enough to require action by the trial court.

Accordingly, the Appellate Division's conclusion that petitioner's claim was "without merit" is neither contrary to, nor involves an unreasonable application of, federal law.

## V. Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was ineffective because he failed to review the 911 tapes before cross-examining Ms. Lonan.

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless the petitioner "has exhausted the remedies

13

available in the courts of the State." 28 U.S.C. § 2254(b)(1). A habeas corpus petitioner who has defaulted a federal claim in state court, either by failing to preserve the claim for state appellate review or by failing to present the claim to the appropriate state forum within the time period prescribed by state law, meets the technical requirements for exhaustion because state remedies are no longer "available" to the petitioner. Under those circumstances, however, the independent and adequate state ground doctrine bars federal habeas corpus review. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). The doctrine provides that a federal court may not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. The independent and adequate state law ground may be either substantive or procedural. *Id*. at 729. Notwithstanding the independent and adequate state ground doctrine, however, a federal court may consider a claim that was defaulted in state court if the petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the claim would result in a fundamental miscarriage of justice because the petitioner is actually innocent of the crime for which he or she was convicted. *Id*. at 750.

Here, petitioner failed to raise his claim of ineffective assistance of trial counsel on direct appeal and was statutorily barred from raising it on a Section 440 motion. Thus, he defaulted the claim in state court. Since petitioner fails to demonstrate cause or prejudice and makes no claim of actual innocence, this court may not consider the claim.

### VI. Ineffective Assistance of Appellate Counsel

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the

effective assistance of counsel on the defendant's first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Claims of ineffective assistance of appellate counsel are analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Counsel is judged ineffective when: (1) counsel's performance falls below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-694.

Petitioner argues that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel based on trial counsel's failure to review the 911 tapes prior to cross-examining Ms. Lonan. But, as discussed *supra*, even had defense counsel cross-examined Ms. Lonan about the inconsistencies between her testimony and her statements to the EMS operator, the outcome of the trial would not have been different. Thus, petitioner could not satisfy the second prong of the *Strickland* test on a claim for ineffective assistance of trial counsel; such a claim would be meritless. As a result, appellate counsel was not ineffective for failing to raise a claim of ineffective assistance of trial counsel. *Cf. Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

Accordingly, the Appellate Division's conclusion that petitioner "failed to establish that he was denied the effective assistance of appellate counsel" is neither contrary to, nor involves an unreasonable application of, federal law.

**CONCLUSION**

For the reasons set forth above, petitioner's application for a writ of habeas corpus is denied. Since petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied pursuant to 28 U.S.C. § 2253(c). Moreover, the court certifies,

pursuant to 28 U.S.C. § 1915(a)(3), that *in forma pauperis* status is denied for the purpose of an appeal. The Clerk of Court is directed to close this case.

**SO ORDERED.**

/S/
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
June 26, 2006